**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | **Case No. 4:25-cr-00336** |
| **TYLER JOHN JORDAN**, | |
| Defendant. | |

**UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE**
**THE TESTIMONY OF DAREK PLEASANTS**

The United States moves to exclude the proposed expert testimony of Darek Pleasants as improper expert testimony and inadmissible under Rules 401, 402, 403, and 702.  The Defendant's expert disclosure states that Mr. Pleasants will testify that based on his review of a video of the Defendant holding a firearm that the firearm had not been modified with a machinegun conversion device, i.e., a "switch."

The Defendant, however, has confessed to law enforcement that he had a gun with a switch, and admitted that he knew it was a switch.  As such, under Rules 401, 402, 403, and 702, the expert's testimony would ***not*** help the trier of fact to understand the evidence or determine a fact in issue.  His opinion does not reflect a reliable application of principles and methods in light of the Defendant's admission, and are therefore irrelevant and would only serve to confuse the jury.

## I.    PROCEDURAL HISTORY

On June 24, 2025, the Defendant was charged in a two-count indictment out of Southern District of Texas, Houston Division.  The Defendant was charged with Possession of a Machinegun, in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2), and Possession in violation of Title 26, United States Code, Sections 5841, 5861(d) and 5871.

1

The Pretrial Conference is set for March 19, 2026, and Jury Trial is set for March 23, 2026.

## II.    FACTUAL BACKGROUND

### A.  March 16, 2025 Shooting

On Sunday, March 16, 2025, two groups engaged in a shootout at the McDonalds restaurant, located at 6110 North Fry Road, Katy, Texas during afternoon business hours. The Defendant Tyler Jordan was a member of the instigating group. Another member of the Defendant's group, Antoine Ridge, fired a Glock pistol that had been modified with a machinegun conversion device, known as a "switch." Surveillance videos and the investigation revealed that Ridge fired at least 16 bullets in the span of approximately two seconds. An innocent bystander was struck and killed by Ridge. The other group returned fire, injuring the Defendant.

At the time, Ridge was staying at the residence belonging to Mr. Jawara Lloyd. Mr. Lloyd has known both Jordan and Ridge for years. Mr. Lloyd later told officer that on March 17, 2025, the day after the shooting, he overheard Ridge talking on the phone to the Defendant. Mr. Lloyd heard the Defendant tell Ridge, "Man I got that 'blickey', … don't worry about this." A "blickey" is slang for a "firearm" or "gun." Given the fact that the Defendant and Ridge were talking about a gun less than a day after the shooting, the Government will assert at trial that the Defendant was telling Ridge that he has hidden the modified Glock that used in the shooting.

### B.  Defendant Confesses that the Video Found on His Phone was Him Holding the Modified Glock that Was Used in the Shooting

During their investigation, detectives recovered from the Defendant's first cellphone (iPhone 15, IMEI 353817901662171) a video of him possessing the modified Glock that was used during the McDonald's shooting. It is clear from the video that the firearm was modified with a machinegun conversion device because the modification was visibly protruding from the backplate of this firearm.

2



Later in the investigation, two detectives confront the Defendant with this video and the Defendant confirms that: (1) the gun in the video was the same gun that Ridge used in the McDonald's shooting, and (2) the Defendant knew that the gun was modified with a switch.

The first instance occurred on March 17, 2025, when Detective Matthew Curry met with the Defendant to return the phone to the Defendant. After returning the phone, Detective Curry tells the Defendant that he saw the video on the Defendant's phone of the Defendant holding a "Glock switch." The Defendant stated that it was his gun and that it was him holding it.

In the second instance occurred on March 19, 2025 when Detectives Ryan Hilz and Wendy Gonzalez interviewed the Defendant at his home. During this interview, Detective Hilz questions

3

the Defendant about the firearm used in the McDonald's shooting.  The Defendant changes his story as far as who the gun belonged to, but the Defendant confesses that the gun in the video was the gun used in the shooting and that the Defendant knew the gun was modified with a switch (i.e., a machinegun conversion device).

| | |
|---|---|
| Detective Gonzalez | Have you ever touched or used that weapon that he, that [Ridge] had? |
| Defendant | Uh… I wouldn't say… I… I… I've seen it.  I know what gun it is cause I've seen it.  I've touched the gun before.  But have I used it?  No.  I never used it.  But I've seen [Ridge]'s gun.  Like he's shown me his shit. |
| Detective Hilz | We have a video of you holding that gun, right? |
| Defendant | Yeah, that's why I said… that's why I said… |
| Detective Hilz | Let's be … Let's be |
| Defendant | Yeah, that's why I said I'm being honest, though.  I said I didn't use it, though.  I didn't shoot nothing.  But I had the video. |
| Detective Hilz | Hold on a second, hold on just a second.<br><br>She asked you to be honest right? |
| Defendant | Uh huh. |
| Detective Hilz | When you start going, "Well I don't know, maybe, kinda, I don't really know but maybe a little bit."  Let's just call it what it is, right?<br><br>You've handled the gun, yes or no? |
| Defendant | Yeah, that's what I'm saying.  I've touched it before. |
| Detective Hilz | And you know because you've handled it, Detective Curry already told you, that it has a switch on it.  You said you knew it had a switch on it, right? |
| Defendatn | Yes sir. |
| Hilz | OK, so, don't cut in all the little stuff and try to downplay it.  Just yes or no.  Be straight forward with me. |

4

| Defendant | Yeah, that's what I'm saying.  When she asked me have I got a view, that's why I said "yeah."  I've never shot it before, no.  But I've handled it… |
|---|---|
| Detective Gonzalez | You've handled it before |
| Defendant | Yeah, I've handled it before.  I've hold it, you know what I'm saying.  I got a picture of how it look like.  That's how the detective know how it look like. |

*See* March 19, 2025 interview of Defendant, 8:29-9:40.

### C.  *Defendant's Search History Confirms His Knowledge of "Switches"*

Detectives later acquired and searched the contents of the Defendant's second phone (iPhone 13, IMEI 350776590785698).  On the phone, officers found four Google searches that the Defendant made on the device relating to "switches":

- stolen guns with a switch in houston this year been caught

- guns with switch in houston news

- guns with switch in houston

- gin with switch in hkustin

The first search ("stolen guns with a switch in houston this year been caught") was made on October 14, 2024.  The other three searches did not have a corresponding date.

Furthermore, the second phone also revealed two websites that the defendant visited that directly discuss switches.

The first article was a Fox 4 News site that the Defendant visited on October 12, 2024.  The news article was titled "'Operation Texas Kill Switch': Statewide effort to stop spread of machine

gun conversion devices."[1]   The article opens with:

> U.S. Attorneys across Texas announced a new statewide initiative looking to keep illegal machine gun conversion devices, more commonly known as "switches" off the streets.  "Switches" are a piece of plastic about the size of a LEGO that can convert legal firearms into fully-automatic weapons.

The second article was a press release from the US Attorney's Office, Northern District of Texas titled "Texas Man Who Allegedly Imported Switches Charged With Gun Crime."[2]   The article discusses a defendant who was criminally charged via criminal complaint with unlawful possession of an unregistered firearm.  The press release goes on to explain Customs & Boder Protective intercepted a parcel that "allegedly contained four machinegun conversion devices, also known as switches."

These searches and the articles that the Defendant made regarding "switches" and the articles that the Defendant read that specifically defined "switches" as illegal machinegun conversion devices are direct evidence that the Defendant knows what switches are.  He knew at the time read the articles and made the searches in October 2024, so he knew what they were on March 19, 2025 when he confirmed that the firearm that the Defendant possessed and that Ridge used in the McDonald's shooting was modified with a "switch," i.e., an illegal machinegun conversion device.

### III.    ARGUMENT

Based on the Defendant's Notice of Expert Testimony (Dkt. 23), Mr. Darek Pleasants will testify regarding:

1. the modification on the firearm observed in the video found on the Defendant's first phone is not a machinegun conversion device, i.e., a "switch" but is instead a

---

[1] https://www.fox4news.com/news/operation-texas-kill-switch-glock-switch.amp
[2] https://www.justice.gov/usao-ndtx/pr/texas-man-who-allegedly-imported-switches-charged-gun-crime

cosmetic "backplate";

2. the functionality of machinegun conversion devices and how they convert a semi-automatic firearm to a fully-automatic firearm; and

3. other modifications that can be made to a handgun that do not impact the rate of fire, such as the backplate or an extended magazine.

As detailed below, testimony as to each of these topics is improper under Rules 401, 402, 403, and 702 and should be excluded as a matter of law.

Under Rules 401 and 402, "[I]rrelevant evidence is not admissible." Furthermore, Rule 403 permits the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Under Rule 702, an expert witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion or otherwise, provided that:

(a) the expert's scientific, technical, or other specialized knowledge will *help the trier of fact* to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

*First*, the law is clear that "an expert in a criminal case may not offer 'an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged.'" *United States v. Hernandez-Acuna*, 202 F. App'x 736, 739 (5th Cir. 2006) (quoting Fed. R. Evid. 704(b)).

Here, the facts establish that the Defendant knows that a "switch" is an illegal machinegun conversion device that converts a semi-automatic firearm into a fully-automatic firearm. His

7

Google searches, including "stolen guns with a switch in houston this year been caught," and his review of articles that discuss the US Attorney's Office's and law enforcement's joint efforts to prosecute machinegun cases prove that he knew what "switches" are as of October 2024. Therefore, he knew what he was confessing to when he confirmed that the firearm he possessed in the video on his phone was modified with a "switch."

To the extent Pleasant's testimony will be that Defendant cannot or did not have knowledge that the firearm he possessed was a machinegun, such testimony would be inappropriate and should be excluded—Pleasant should be expressly precluded from opining on Defendant's mental state or condition.

*Second*, to the extent that Pleasant will testify that the firearm in the video is not modified with a switch but instead modified with a cosmetic backplate, this is not consistent with the facts of this case and is therefore not relevant under Rules 401, 402, and 702.

In particular, Rule 702 'helpfulness' standard "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, (1993).   Rule 702 further requires that "evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [Daubert's gatekeeping requirement] is ensure the reliability *and relevancy* of expert testimony.") (emphasis added); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the

8

data and the opinion proffered."). In short, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." *See* Fed. R. Evid. 702, Committee Notes on Rules—2000 Amendment.

The firearm used in this case that the Defendant admitted to holding was modified with a switch: the Defendant admitted that it had a switch, the modification is visible in the video of the defendant holding the firearm, and the firearm operated as a machinegun by expelling 16 bullets in approximately two seconds. The Defendant's search history further confirms that he knew what a switch was when he made his confession. Therefore, Pleasant's testimony that there are other modifications that *could* be made that would change the backplate's appearance is wholly irrelevant. Put another way, the Defendant has already told officers that the Glock was modified with a switch, and this is confirmed by the other evidence in this case. Mr. Pleasant's testimony about what other things the device *might* have been *if it were not a switch* is completely irrelevant, unhelpful, and will mislead the jury. Such testimony is improper and should also be excluded under Rule 702.

Similarly, because the evidence establishes that the firearm had a switch, Pleasant's testimony is not relevant under Rule 401 because it does not have "any tendency to make a fact more or less probable." Accordingly, it is also inadmissible under Rule 402. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.")

*Third*, to the extent that Pleasant will testify about the operability of switches and how they convert a semi-automatic firearm to a fully-automatic firearm, that testimony will already be provided by the Government's expert in it's case-in-chief. In particular, during the Government's case-in-chief, it anticipates the testimony of Firearms Enforcement Officer ("FEO") James Everman of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. FEO Everman has

9

significant expertise regarding firearms, including machineguns and their function. To the extent Pleasant has any appropriate expert testimony to offer regarding the operability of machineguns generally, Defendant can elicit testimony from FEO Everman on cross-examination rather than calling a separate witness to provide cumulative testimony. In short, considering FEO Everman's expected testimony, Plesant's testimony will cause undue delay, waste time, mislead the jury and result in the needless presentation of cumulative evidence, and it will not be helpful to the jury as required by Rules 401 and 702. *See* Fed. R. Evid. 403 (otherwise relevant evidence may be excluded where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

## IV.    CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court to exclude the proposed expert testimony of Mr. Pleasant as improper expert testimony under Rule 702 and inadmissible under Rules 401, 402, and 403 as being irrelevant and causing undue delay, wasting time, misleading the jury, and needlessly presenting cumulative evidence.

10

Date: March 4, 2026

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

/s/ Anh-Khoa T. Tran
Anh-Khoa T. Tran
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9551
anh-khoa.tran@usdoj.gov

Charles Hagerman
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, TX 77002
Tel: (713) 567-9514
charles.hagerman@usdoj.gov

## CERTIFICATE OF CONFERENCE

I certify that I have communicated with defense counsel for the Defendant, who opposes this motion.

/s/ Anh-Khoa T. Tran
Anh-Khoa T. Tran
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on March 4, 2026, to the CM-ECF system of the United States District Court for the Southern District of Texas for electronic delivery to all counsel of record.

*/s/ Anh-Khoa T. Tran*
Anh-Khoa T. Tran
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9551
anh-khoa.tran@usdoj.gov