**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:25-cr-00336** |
| **TYLER JOHN JORDAN,** | |
| **Defendant.** | |

**UNITED STATES' RESPONSE TO DEFEDNANT'S MOTION *IN LIMINE* TO**
**EXCLUDE THE TESTIMONY OF JAWARA LLOYD (DKT. 37)**

The Government has been clear—and the evidence has supported—that the Defendant possessed the machinegun twice in this case.  First, five hours before the shooting on March 16, 2025.  Second, about 12 hours after the shooting on March 17, 2025.[1]  Both instances of possession relate to the same machinegun and are charged under the same Count.  Therefore, the Mr. Lloyd's

---

[1] The Defendant's assertion that this second possession is "uncharged conduct" is unfounded.  The Indictment charges the possessions that occurred "on or about" March 16, 2025—i.e., the shooting—, and covers the possessions that occurred before and after the shooting.  Both charged possessions involve the same defendant and the same gun, centered around the shooting, and occurred approximately 17 hours apart.  In fact, it may have been improper to charge them as separate incidents.  *See, e.g.*, *United States v. Stephens,* 118 F.3d 479, 481-82 (6th Cir.1997) (it was error to charge defendant in separate counts for possession of cocaine on same day merely because the cocaine was in two separate stashes); *United States v. Clay*, 355 F.3d 1281, 1284 (11th Cir. 2004) (same); *see also Millard v. United States*, 148 F.2d 154, 156 (5th Cir. 1945) (affirming conviction that charged in one count two or more distinct offenses because "the allegations are sufficient to reasonably apprise the defendant of the nature of the charge against him and to furnish a basis for a plea of former jeopardy").

In any case, the Defendant has been on notice of this second possession since the inception of the case.  The initial discovery production on August 5, 2025 included offense reports that disclosed Mr. Lloyd's statements, and the Government has repeatedly told the Defendant from the beginning that it was the second possession—where the Defendant hid the firearm—that is the most concerning.

1

statements that the Defendant said he had "put up the blickey" is intrinsic to the case and is not subject to 404(b).

Moreover, the Defendant's second possession of the firearm, after the shooting, is easily explained.  The shooter, Antoine Ridge, is seen in surveillance returning to the Defendant's car after the shooting before he runs off into the fields.  The Defendant then directed three other people, Tobias Johnson, Clarence Earls, and Terrence Earls to move his car.  One of these individuals, at the Defendant's direction, hid the firearm.  Then the Defendant, after leaving the hospital, called the shooter Ridge via Instagram or someone else's phone.  Notably, the Defendant tells officers in a later interview that he primarily contacts Ridge through Instagram and that he deleted these calls before turning his phone over to officers.

Ultimately, it is a question for the jury to believe Mr. Lloyd's testimony that he heard the Defendant tell Ridge, "Man I got that 'blickey', … don't worry about this."

## I.     FACTUAL BACKGROUND

On Sunday, March 16, 2025, two groups engaged in a shootout at the McDonalds restaurant, located at 6110 North Fry Road, Katy, Texas during afternoon business hours. The Defendant Tyler Jordan was a member of the instigating group. Another member of the Defendant's group, Antoine Ridge, fired a Glock pistol that had been modified with a machinegun conversion device, known as a "switch." Surveillance videos and the investigation revealed that Ridge fired at least 16 bullets in the span of approximately two seconds. An innocent bystander was struck and killed by Ridge. The other group returned fire, injuring the Defendant.

Surveillance shows Ridge running away from McDonald's, running back to the car to grab what appears to be a bag, and then running off into the fields.  At the time, officers believed that Ridge still had the gun on him.  Officers conducted a thorough search of the field but did not find

2

the gun.

After being shot, the Defendant ran off to a nearby Waffle House. There, he called Tobias Johnson to go pick up his car and drive it away. Tobias Jonhson drove the vehicle to a separate location, and then two other individuals, Clarence Earls and Terrance Earls took the car to the defendant's residence. Officers maintained surveillance of the vehicle at the defendant's residence until it was towed. The gun was not in the vehicle either.

During much of this time, the Defendant was at the hospital being treated for his bullet wound. He was interviewed numerous times by officers and repeatedly lies about the events of the shooting, including who was involved, why the fight occurred, what the assailants were wearing, whether he asked for his car to be moved, and who came to retrieve his car. Jordan even maintained that he did not have Ridge's phone number saved, which was also a lie.

He eventually consented to the search of his phone, but officers noticed that all calls to and from Ridge after the shooting were deleted, and Instagram messages and call logs from Ridge on and after March 16, 2025 were also deleted. The Defendant then confessed that he had deleted the Instagram messages and call logs before turning the phone over to officers.

At the time of the shooting, Ridge was staying at the residence belonging to Mr. Jawara Lloyd. Mr. Lloyd has known both Jordan and Ridge for years. Mr. Lloyd later told officer that on March 17, 2025, the day after the shooting, he overheard Ridge talking on the phone to the Defendant. Mr. Lloyd heard the Defendant tell Ridge, "Man I got that 'blickey', … don't worry about this." A "blickey" is slang for a "firearm" or "gun." Given the fact that the Defendant and Ridge were talking about a gun less than a day after the shooting, the Government will assert at trial that the Defendant was telling Ridge that he has hidden the modified Glock that used in the shooting. At trial, Mr. Lloyd will testify about the conversation that he overheard between the

3

Defendant and Ridge.

## II.    ARGUEMNT

### A.  Mr. Lloyd's Testimony is not 404(b) Because it is Intrinsic to the Case

Other act evidence is "intrinsic" when the evidence of the other act and evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990).  This evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place. *United States v. Kloock*, 652 F.2d 492, 494–95 (5th Cir.1981); *see also, United States v. Royal*, 972 F.2d 643, 647 (5th Cir.1992) (intrinsic evidence admissible so the jury may evaluate all the circumstances under which the defendant acted).

Intrinsic evidence does not implicate Rule 404(b), and "consideration of its admissibility pursuant to Rule 404(b) is unnecessary." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994); *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996).

Here, Mr. Lloyd's testimony about his history with the defendant and Ridge, the fact that Ridge was staying with him during the time of the shooting, and him overhearing Ridge and the Defendant on the phone are all intrinsic to the charged conduct of the Defendant possessing the machinegun.  Therefore, none of this is subject to 404(b) analysis.

### B.  Mr. Lloyd's Testimony is Relevant and Supported By the Evidence

The Defendant's self-serving recount of the facts omits numerous facts that, when taken as a whole, makes it clear what happened after the shooting:  (1) Ridge stashed the gun in the Defendant's car, (2) the Defendant directed Tobias Johnson, Clarence Earls, and Terrence Earls to move the car and hide the gun, and (3) the Defendant called Ridge to not worry about the gun

4

because the Defendant had hidden the evidence.

In particular, the Defendant continuously lied to investigating officers about who was involved in the shooting, why the shooting occurred, his relationship to the shooter, what people were wearing, and who moved his car. Regarding the events after the shooting, he initially lied to officers, telling them that while he was laying in Waffle House and bleeding, he called his brother who insisted on coming to get his car. The Defendant eventually recanted and said that he called Tobias Johnson (one of the individuals involved in the shooting) to take the car to "the twins," Clarence Earls and Terrence Earls, so they could take it back to his house. Put another way, his story became that while he was laying on the floor, bleeding out at a Waffle House, his primary concern was to arrange for three different people to move his car back to his house. This, alone, is sufficient evidence for a jury to conclude that he was orchestrating the coverup and disposal of the gun.

And as to the phone call to Ridge, he repeatedly told officers that he primarily contacts Ridge through Instagram, and confessed that he deleted all of his Instagram messages and call logs with Ridge. Moreover, it's common knowledge that Instagram calls can be made through a computer just as easily as it is made through his phone, so the fact that he did not have his phone is of no consequence. These facts are, therefore, sufficient for a jury to conclude that the Defendant did make the call to Ridge to confirm that the gun was disposed of.

All of these facts corroborate the conversation that Mr. Lloyd overhears. Because it is more than possible, by at least a preponderance of the evidence, for a reasonable jury to find Mr. Lloyd's statements to be true, his statements are admissible under both Rules 104.

Separately, because the Defendant's statement about disposing the firearm is directly related to the charged possession of a machinegun (that is, he had to have control over the firearm

in order to have it disposed of), it is directly relevant and not unduly prejudicial, confusing, or a waste of time. *See* Rule 403. Not only does the statement have probative value, it underpins the Government's theory on this second possession.

### C. **Mr. Lloyd's Statement that the Defendant is a "Gun Fanatic" is Relevant to Knowledge**

During the second interview of Mr. Lloyd, he was asked about his relationship with the Defendant. Mr. Lloyd stated that the defendant was a "gun fanatic" and frequently made posts on Instagram about firearms. Mr. Lloyd's statement about the defendant is admissible under Rule 404(b) because it goes to the Defendant's knowledge of firearms, and that his possession of a machinegun was not an accident or a mistake.

In particular, the Government is not alleging any of his prior firearm possessions were illegal, nor is the Government introducing the evidence to show his character as someone who likes to possess or shoot guns. Instead, it goes purely to his knowledge of firearms such that he had knowledge that what he possessed in both instances was a machinegun, and it was not by accident or mistake. *See* Rule 404(b)(2) (permitting evidence of other acts for other purposes, including "knowledge," "absence of mistake," "lack of accident."); *see also* United State's Response to Defendant's Motion In Limine to Exclude Photographs of Defendant Holding Firearms.

### D. **Mr. Lloyd's Criminal History is Inadmissible**

For the reasons stated in the Government's Motion in Limine to Preclude Improper Impeachment Evidence (Dkt. 31), the Defense should not be allowed to cross-examine Mr. Lloyd on decades old convictions and offenses that are not convictions.

While the Defendant is entitled under the Sixth Amendment to **biased-based** cross

examination, Mr. Lloyd's deferred adjudication does not create any bias. First, his statements to the officers were made before they knew his criminal background, so there is no leverage to be gained there. Second, the Government has not given Mr. Lloyd any immunity or promise against future prosecution for statements related to this case—or at all. Third, the Government has not requested leniency from his State of Texas probation officer due to his statements—or at all. In fact, only detectives were present during his first conversation, and both of his conversations with detectives and prosecutors were recorded and disclosed. There is simply no evidence that there is a quid-pro-quo for his testimony. Fourth, the fact that he is on a deferred adjudication actually ensures his truthfulness. He has no stake in the outcome of this case, but if he does commit perjury, then he would open himself to a new federal charge that might impact his deferred adjudication. Lastly, the fact that the Defendant hid the murder weapon doesn't "deflect" suspicion away from Ridge, who is unquestionably the shooter in this case.

At the end of the day, there is simply no evidence that Mr. Lloyd has any incentive to lie, much less any incentive to lie that would be connected to his deferred adjudication. Therefore, for the reasons stated in in the Governments Motion *in Limine* (Dkt. 31), the Defendant should be precluded from cross-examining on this deferred adjudication.

Date: March 17, 2026                          Respectfully submitted,

                                              JOHN G.E. MARCK
                                              Acting United States Attorney

                                              /s/ Anh-Khoa T. Tran
                                              Anh-Khoa T. Tran
                                              Assistant United States Attorney
                                              1000 Louisiana Street, Suite 2300
                                              Houston, Texas 77002
                                              Tel: (713) 567-9551
                                              anh-khoa.tran@usdoj.gov

                                              Charles Hagerman
                                              Assistant United States Attorney
                                              1000 Louisiana Street, Suite 2300
                                              Houston, TX 77002
                                              Tel: (713) 567-9514
                                              charles.hagerman@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on March 17, 2026, to the CM-ECF system of the United States District Court for the Southern District of Texas for electronic delivery to all counsel of record.

                                              /s/ Anh-Khoa T. Tran
                                              Anh-Khoa T. Tran
                                              Assistant United States Attorney
                                              1000 Louisiana Street, Suite 2300
                                              Houston, Texas 77002
                                              Tel: (713) 567-9551
                                              anh-khoa.tran@usdoj.gov