**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**TYLER JOHN JORDAN,**<br>**Defendant.** | **Case No. 4:25-cr-336** |

**GOVERNMENT'S MOTION TO RECONSIDER DEFENDANT'S**
**M.I.L. ON MURDER INVESTIGATOIN (DKT. 40)**

During the Pretrial Conference, the Court expressed concern as to how discussion of the other shooting victim and the homicide investigation would be excluded from trial. Nevertheless, the Court granted the Defendant's Unopposed Motion in Limine regarding the Murder Investigation (Dkt. 40). Throughout trial, the Defendant solicited testimony to directly attack the nature and circumstances of his interviews, so that he can argue that he was forced, coerced, and/or pressured into giving a false confession. The Government hereby requests the Court reconsider the Motion in Limine on Murder to permit Detective Hilz to provide context into how and why officers conducted their interviews the way they did. Only with the full context of the fact that someone was shot and later died will the jury have a complete understanding as to why the Defendant was interviewed numerous times in one evening, why Detective Curry (who is a homicide detective) was brought in to requestion the Defendant, and why Detectives Hilz and Gonzalez went back to request the Defendant at his home.

By way of background, the Government agreed to exclude testimony about the murder investigation on February 26, 2026 because it believed the Defense's theory of the case was centered around the Defendant's possession and knowledge of the machinegun. Trial has proven that that belief was in error. The Defendant has made clear that he will argue in closing that the

1

way he was interviewed—such as the fact that he was interviewed four times while laying in the hallway of the hospital with a gunshot wound—led him to give "false confessions."  In fact, the Defendant argued in opening that he was "pressured, and pressured, and pressured" by law enforcement to give those statements.  The Defendant has already questioned Detective Curry about the Defendant's state of mind while being interviewed, asked questions about the number of law enforcement officers around the Defendant, asked questions about whether the Defendant was detained or free to leave, and admitted photographs showing the Defendant laying in the hospital.

And now before this Court is a separate request where the Defendant is seeking to admit entire portions of his recorded interview.  The Defendant has argued that these statements that are subject to the hearsay rule should be admitted either, (1) under Rule 106, Rule of Completeness, to show the full "context" of the interview—including the nature and circumstances that he was interviewed, or (2) rule 803(3) as a "then state-of-mind" exception to hearsay, to show the Defendant's state-of-mind while he was being repeatedly interviewed by detectives.  The Defendant's arguments here boil down to the same thing.  They want to argue to the jury that the Defendant was unfairly questioned, coerced, harassed, and/or pressured by Detectives into giving a "false confession."

The Defendant's main theory of the case is to cast the Detectives in a bad light, arguing that they were abusive and coercive.  This argument requires the Government to put into *complete* "context" the of the interviews and the investigation.  The reason why Detective Hilz interviewed the Defendant three times was because there were multiple gunshot victims.  The reason why Detective Curry (a homicide detective) was tasked to go interview the Defendant a fourth time was because the other gunshot victim died, and the investigation went from a shooting (which Detective Hilz investigates) to a homicide (which Detective Curry investigates).  The reason why Detectives

continued to interview the Defendant twice after he was released was because they still did not know the identity of the shooter. The reason officers went through the efforts to seek warrants to locate the Defendant and redownload his phone is because the video on his phone is that of a potential murder weapon.

That is to say, if the Defendant will attack the investigation in so far as the nature, tone, intensity, or frequency in which he was interviewed by law enforcement, then he has opened the door for testimony as to why officers conducted the interviews the way that they did. To be clear, the Government would only solicit testimony in so far as to explain that there was another victim, the victim passed away so that the investigation turned into a homicide investigation, and that the victim was shot by Antonine Ridge and not the Defendant. The Government will not seek to admit as evidence videos that depict the other victim being shot or photos of the decedent at the hospital or his auto topsy.

As the Court already noted during the Pretrial Conference, the defendant is not on trial for the shooting, so there would be no unfair prejudice. The Government is not alleging he shot the gun, much less that he is responsible for the death in this case—and this has been made clear to the jury numerous times throughout this trial. Therefore, any unfair prejudice does not substantially outweigh the probative value of testimony about the investigation to rebut the Defendant's direct attacks on the investigation. *See* Rule 403 ("The court may exclude relevant evidence if its probative value is ***substantially outweighed*** by … unfair prejudice") (emphasis added).

Moreover, what any remaining prejudice can be cured by a contemporaneous limiting instruction or a limiting instruction in the jury charge, such as the one the parties jointly proposed – "Caution—Consider Only Crime Charged." *See, e.g., United States v. Barnes*, 803 F.3d 209,

221 (5th Cir. 2015) (finding the district court did not abuse its discretion by permitting evidence of a murders where "the Government's evidence regarding the murders was relatively tame" and "the district court was careful to provide limiting jury instructions to mitigate any potential prejudice."); *see also United States v. Birtha*, 384 F. App'x 351, 353 (5th Cir. 2010) (affirming conviction where "[t]he Government offered evidence showing only that the sexual assault had occurred, and it did not present unnecessary factual details about it" and "the prejudicial effect of the evidence was mitigated, because the district court gave a limiting instruction regarding other-acts evidence."); *Mann v. Jones*, 341 F. App'x 158, 167 (6th Cir. 2009) (evidence of murder was appropriate because "the evidence at issue, even if it was somewhat more extensive than was necessary, was not overly graphic or gruesome" and "hat any possible prejudice was mitigated by the trial court's repeated instructions limiting the use for which the evidence of Bartmess's murder could be considered").

Date:  March 25, 2026

JOHN G.E. MARCK
Acting United States Attorney
Southern District of Texas

By  */s/ Anh-Khoa T. Tran*
Anh-Khoa T. Tran
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9551
Email: anh-khoa.tran@usdoj.gov

Charles Hagerman
Assistant United States Attorney
1000 Louisiana Street, Suite 2300
Houston, TX 77002
Tel: (713) 567-9514
Email: charles.hagerman@usdoj.gov

4

5

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on March 25, 2026, to the CM-ECF system of the United States District Court for the Southern District of Texas for electronic delivery to all counsel of record.

*/s/ Anh-Khoa T. Tran*_____
Anh-Khoa T. Tran
Assistant United States Attorney