**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                                    **Cr. No. 4:25-cr-336**

**TYLER JOHN JORDAN**

**DEFENDANT'S MOTION TO ADMIT EXHIBITS 3A-3F**

The Defendant, Mr. Tyler Jordan ("Mr. Jordan") through counsel, respectfully moves this Court, for an order admitting Defendant's Exhibits 3A–3F. *See* Exhibit 1. These exhibits consist of additional portions of a recorded interaction between Mr. Jordan and law enforcement. The Government has introduced select excerpts of this same recording in its case-in-chief, creating a misleading and incomplete narrative. Under Federal Rule of Evidence 106 and controlling precedent, the remaining portions are necessary to correct that misimpression and must be admitted in the interest of fairness.

I.     **The Rule of Completeness requires admission of the remaining portions**

Federal Rule of Evidence 106 provides that if a party introduces part of a statement, "an adverse party may require the introduction … of any other part… that in fairness ought to be considered at the same time." Fed. R. Evid. 106. As the Advisory Committee explained in its 2023 Amendment, the Rule of Completeness would be rendered ineffective if a party could introduce selected portions of a

1

statement and then exclude necessary context on hearsay grounds. *See* Fed. R. Evid. 106 advisory committee's note ("the rule of completeness…cannot fulfill its function if the party that creates a misimpression…can then object on hearsay grounds and exclude a statement that would correct the misimpression") (citing *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986)).

I.    **Fifth circuit precedent confirms that completing evidence is admissible over hearsay objections.**

The Fifth Circuit has repeatedly held that Rule 106 operates independently of the hearsay rules and permits admission of otherwise inadmissible statements when necessary to correct a misleading impression.

In *United States v. Portillo*, 969 F.3d 144, 176 (5th Cir. 2020), the court held that the rule of completeness "operates independently from Rule 801(d)(1)(B) and allows the admission of statements even when they are otherwise barred by the hearsay rules." Similarly, the Supreme Court has emphasized that Rule 106 ensures that related portions of a statement are considered "contemporaneously," preventing distortion through selective presentation. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988).

More recently, the Fifth Circuit reaffirmed this principle in *United States v. Carpenter*, 140 F.4th 733, 741 (5th Cir. 2025), rejecting the exclusion of a defendant's recorded statements as "self-serving hearsay" and finding "little trouble concluding" that such a ruling misapplied controlling precedent. The court made

2

clear that where the Government introduces portions of a recording, fairness may require admission of additional portions that provide necessary context. The rule "guards against the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material," *United States v. Burns*, 162 F.3d 840, 853 (5th Cir. 1998) (internal quotation marks and citation omitted).

Here, the Government has introduced only selected excerpts of Mr. Jordan's recorded interaction with law enforcement. These excerpts omit critical context contained in Exhibits 3A–3F. Without these additional portions, the jury is left with an incomplete—and misleading—understanding of Mr. Jordan's statements, tone, and intent.

Exhibits 3A–3F are not separate or unrelated statements; they are part of the same continuous recording already presented to the jury. They directly explain, qualify, and contextualize the portions introduced by the Government. Their exclusion would allow the Government to benefit from a distorted presentation of the evidence—precisely the harm Rule 106 is designed to prevent.

3

For these reasons, Mr. Jordan respectfully requests that the Court admit Exhibits 3A–3F into evidence.

Respectfully submitted,

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas No. 566458
New Jersey State Bar No. 2320341

AMR A. AHMED
Supervisory Federal Public Defender
Southern District of Texas No. 3088803
State Bar of Texas No. 24146376
Attorneys for Defendant
440 Louisiana, Suite 1350
Houston, Texas 77002
Telephone: 713.718.4600
Fax: 713.718.4610

**EXHIBIT 1**

## Interview 1

Interviewer: Det. Hilz
Location: Hospital
Date: March 16, 2025

**Defendant's Exhibit 3a**                    **Government Exhibit 10 (A+B)**
Lenth: 6:23                                   Lenth: 4:01

The government's recordings omit the following information which should be admitted under Federal Rule of Evidence 106, over any hearsay objection:

1. Mr. Jordan counters correct phone number.
2. Mr. Jordan explains that he uses the term "brother" to refer to an individual who is not his blood brother.
3. Mr. Jordan tells Mr. Hilz that he is in pain.
4. Detective Hilz concludes the interview by telling Mr. Jordan that he may have more questions for Mr. Jordan.

## Interview 2

Interviewer: Det. Hilz
Location: Hospital
Date: March 16, 2025

**Defendant's Exhibit 3b**                **Government Exhibit 11(A, B and C)**

Lenth: 11:16                              Lenth: 6:58

The government's recordings omit the following information which should be admitted under Federal Rule of Evidence 106, over any hearsay objection:

1.  Det. Hilz pressuring Mr. Jordan, suggesting that Mr. Jordan is in trouble for lying in the first interview.

## Interview 3

Interviewer: Det. Hilz
Location: Hospital
Date: March 16, 2025

**Defendant's Exhibit 3c**                    **Government Exhibit 12**

Lenth: 15:38                                    Lenth: 4:24

The government's recording omits the following information which should be admitted under Federal Rule of Evidence 106, over any hearsay objection:

1.  Mr. Jordan accurately identifying the other group of individuals as being in their early twenties.
2.  Mr. Jordan stating that he was swinging and punching, which is a separate, but relevant, false confession.
3.  Mr. Jordan describing the sounds of the gunfire that he heard.
4.  The detective using the word "auto" to help Mr. Jordan describe the gunfire.
5.  Mr. Jordan explaining why he doesn't want to be part of the investigation
6.  Detective Hilz manually examining and taking pictures of Mr. Jordan's phone.

**Interview 4**

Interviewer: Detectives Curry and Hilz
Location: Hospital
Date: March 16, 2025
**Defendant's Exhibit 3d (1, 2, 3, and 4)       Government Exhibit 13 (A and B)**
Total Lenth: 15:38                               Lenth: 4:11

The government's recordings omit the following information which should be admitted under Federal Rule of Evidence 106, over any hearsay objection:

1.  Mr. Jordan accurately describing "T" (Antoine Ridge) as tall, which contradicts the government's argument that Mr. Jordan was lying about all the facts.

2.  Mr. Jordan accurately describing "T" (Antoine Ridge) and "JJ" (Tobias Johnson) as having dreads.

3.  Mr. Jordan misunderstanding the question posed by Detective Curry, which counters the testimony of Detective Hilz that Mr. Jordan was coherent and was able to understand the questions posed to him.

4.  Mr. Jordan accurately identifying the other group of individuals as wearing a white shirt.

5.  Mr. Jordan complaining of feeling pain while he is being questioned.

6.  Mr. Jordan falsely confessing to "punching" during the shooting incident.

7.  Mr. Jordan's concerns about receiving his phone back.

8.  Detective Curry describing the phone extraction to Mr. Jordan as "dumping" his phone.

9.  Detective Curry asking Mr. Jordan to call his father to have his father consent to a search of the vehicle.

10. Mr. Jordan agreeing to a search of his vehicle.

9

**Interview 5**

Interviewer: Detective Curry
Location: In front of Mr. Jordan's home
Date: March 16, 2025
**Defendant's Exhibit 3e**                    **Government Exhibit 14**
Total Lenth: 5:33                              Lenth: 1:22

The government's recordings omit the following information:

1. Mr. Jordan complaining of being unable to sleep because the shooting kept playing in his head.
2. Detective Curry saying that he watched the video from McDonalds prior to interviewing Mr. Jordan, which contradicts his repeated testimony on direct examination.
3. Detective Curry acknowledging that, after watching the surveillance video, everything Mr. Jordan told him was "straight up."
4. Mr. Jordan complaining about other officers being rude to him.
5. Detective Curry saying "end recording" immediately prior to his testimony that he spoke to Mr. Jordan about the video on Mr. Jordan's phone of Mr. Jordan holding the suspected Glock with a switch.

**Interview 6**

Interviewer: Detectives Gonzalez and Hilz
Location: In a police car in front of Mr. Jordan's home
Date: March 16, 2025

**Defendant's Exhibit 3f**                    **Government Exhibit 15(A, B and C)**

Total Lenth: 34:32

Lenth: 11:48

The government's recordings omit the following information which should be admitted under Federal Rule of Evidence 106, over any hearsay objection:

26. The location of the interview is described as a tight back seat of a police vehicle.
27. Mr. Jordan falsely confessing to hitting another person.
28. Mr. Jordan explaining what the term "brother" means to him.
29. Detective Hilz asking Mr. Jordan if he wants "to be there" for his three children to pressure him to cooperate.
30. Detective Hilz asking Mr. Jordan to read his FBI credentials to intimate Mr. Jordan and threaten him with federal charges. Mr. Jordan complies and mumbles the words Federal Bureau of Investigation, pronouncing it incorrectly.
31. Detective Hilz incorrectly suggests to Mr. Jordan that "mere possession" of machine gun is sufficient to convict him
32. Detective Hilz implying that Mr. Jordan needs to consider the "big picture" of how he can be prosecuted.
33. Detective Hilz repeats his assertion to Mr. Jordan that "you knew the gun had a switch on it."
34. Detective Hilz informing Mr. Jordan that if he doesn't stop lying, he Detective Hilz will not be able to show that he a credible reliable person.
35. Detective Hilz repeating the admission that Mr. Jordan needs to start stepping up for his daughters.
36. Mr. Jordan accurately tells Detective Hilz that he picked up "Twan" at location.
37. Mr. Jordan declining to press charges against the person who shot him, indicating that he was afraid to cooperate with Detective Hilz.

**Body worn camera video of Mr. Jordan prior to Interview 1**
Interviewers: Officers Ho and Delgado (casual conversation while standing next to Mr. Jordan's bed)
Location: Hospital
Date: March 16, 2025
**Defendant's Exhibit 22a**                    **Government Exhibit: None**
Total Lenth: 5:07

Admission of this video, without audio, is not objected to by the government. The defense submits that the audio is admissible under rule 106, and is not hearsay (not admitted for its truth), or excluded from hearsay (mental state and physical condition immediately prior this Mr. Jordan's first four interview.
In summary, the video contains:
   - Evidence of Mr. Jordan's unusual tone fluctuations, uninhibited body language, physical injury, facial expressions, appearance of being under the influence of pain medication.
   - Discussion between officer and Mr. Jordan about Mr. Jordan's gunshot wound and medical treatment.
   - Mr. Jordan's statement that he was not the shooter, and how the shooting sounded to him.
   - A statement from an officer that someone else may have been hurt in the shooting.
   - Mr. Jordan's initial explanation of how the fight occurred, which is consistent with evidence that has already been admitted and will not be offered for its truth.
   - Mr. Jordan being told by an officer that he is the victim prior to his interview with Mr. Jordan.

12